IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRUM AND FORSTER SPECIALTY INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CHRIS ELDREDGE CONTAINERS | : | NO.  22-1123 |

**MEMORANDUM**

**Padova, J.**                                                                              **February 9, 2023**

Plaintiff Crum and Forster Specialty Insurance Company ("CFSIC") has brought this declaratory judgment action against its insured, Chris Eldredge Containers ("CEC") seeking a determination of its rights and obligations under a commercial general liability insurance policy that it issued to CEC, Policy No. BAK-52326-1 (the "CFSIC Policy").   (Compl. Ex. A.) Specifically, CFSIC seeks a declaration that it has no obligation to defend or indemnify CEC in connection with a personal injury action brought against CEC and other defendants in the Philadelphia County Court of Common Pleas captioned Logan v. Weston, et al., April Term, 2021, No. 002328 (Phila. Cnty. Ct. of Com. Pls.) (the "Underlying Action").  (Id. Ex. B.)  CEC has filed a Motion to Dismiss this action for failure to join indispensable parties pursuant to Federal Rule of Civil Procedure 12(b)(7) and also asks, in the alternative, that we decline to exercise our jurisdiction over this action.  For the reasons that follow, we decline to exercise our jurisdiction over this declaratory judgment action and grant the Motion to Dismiss.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The Underlying Action was brought by Craig Logan against Andrew Weston, an employee of CEC, and CEC.  (Id. Ex. B ¶¶ 1-3.)  The complaint in the Underlying Action alleges that, on July 15, 2020, Logan was inside a service truck stopped at CEC's facility when Weston, who was

operating an Ottawa Terminal Tractor on the premises of CEC, backed the Ottawa Terminal Tractor into Logan's vehicle, pushing Logan's service truck several feet and causing Logan to suffer severe injuries.  (Id. Ex. B ¶¶ 2, 5-6.)

The CFSIC Policy covered the period from July 18, 2019 through and including July 18, 2020.  (Id. ¶ 7 and Ex. A at 21 of 103.)  The Policy provides that CFSIC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  (Id. ¶ 18 and Ex. A. at 31 of 103.)  The CFSIC Policy further provides that CFSIC "will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, [CFSIC] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  (Id. ¶ 18 and Ex. A at 31 of 103.)

CEC sought defense and indemnity from CFSIC with respect to the Underlying Action when the complaint was first filed in that case.  (Id. ¶ 11.)  CFSIC disclaimed coverage with respect to the Underlying Action by letter dated June 9, 2021.  (Id. ¶ 12 and Ex. C.)  CFSIC stated in the June 9, 2021 letter that there is no coverage under the CFSIC Policy for the loss described in the complaint in the Underlying Action and that CFSIC would not indemnify or defend CEC with respect to that loss.  (Id. Ex. C at 2.)  CFSIC explained in the letter that "there is **no coverage** for this loss as the damage to the vehicles and [Logan's] injuries arose out of an 'auto' accident" and "the alleged negligence and/or fault [of] Chris Eldredge result from the use of an 'auto', i.e., the trailer that was being pushed by the vehicle driven by the insured, which was owned or operated by Chris Eldredge or a permissive driver."  (Id. Ex. C at 4.)  The letter further states that "since the damages claimed arise from the ownership, maintenance, use or entrustment to others of an auto .

. . the loss is therefore precluded from coverage under the *Absolute Auto, Aircraft and Watercraft*

2

*Exclusion* . . . ." (<u>Id.</u> Ex C at 4.)  The Absolute Auto, Aircraft and Watercraft Exclusion states that the Policy excludes coverage for "'[b]odily injury' or 'property damage' arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft. Use includes operation and 'loading or unloading'." (<u>Id.</u> ¶ 20; Ex. A at 67 of 103; Ex. C at 3.)

An amended complaint was subsequently filed in the Underlying Action and CEC once again sought defense and indemnity from CFSIC with respect to that action.  (<u>Id.</u> ¶ 13.)  CFSIC disclaimed coverage for CEC in connection with the Underlying Action for the second time by letter dated October 7, 2021.  (<u>Id.</u> ¶ 14 and Ex. D.)  The October 7, 2021 letter states that "CFSIC respectfully maintains its disclaimer of any obligation to defend or indemnify Chris Eldredge Containers in connection with the [Underlying Action] . . . ."  (<u>Id.</u> Ex. D at 1.)  The October 7, 2021 letter explained that CFSIC was disclaiming coverage based on "[t]he Policy's Absolute Auto, Aircraft and Watercraft Exclusion . . . [which] excludes coverage for 'bodily injury' arising out of or resulting from the use of *any* 'auto'" because the service truck driven by Logan is an "auto" as defined by the Policy.  (<u>Id.</u> Ex. D at 7 of 8.)  On March 14, 2022, CFSIC sent an additional letter to CEC, maintaining "its disclaimer of any obligation to defend or indemnify Chris Eldredge Containers in connection with the [Underlying Action]."  (<u>Id.</u> ¶ 15; Ex. E at 1.)  In the March 14, 2022 letter, CFSIC explained that the Absolute Auto, Aircraft and Watercraft Exclusion excluded coverage for the bodily injury alleged in the underlying action because the amended complaint in the Underlying Action "alleges that Logan suffered 'bodily injury' arising out of the use of an 'auto' – the service truck Logan was driving" and that this "exclusion applies regardless of whether the Ottawa Terminal Tractor allegedly driven by Weston qualifies as an 'auto' under the Policy." (<u>Id.</u> Ex. E at 2 of 3.)

The Complaint in this action alleges that, while the CFSIC Policy potentially provides coverage for damages in the Underlying Action because it coves "bodily injury," any such coverage is excluded by the Policy's Absolute Auto, Watercraft and Aircraft Exclusion.  (Id. ¶¶ 31-32.)  The Complaint alleges that this exclusion "precludes coverage for damages because of 'bodily injury' that arises out of or results from the use of any 'auto,' regardless of whether the 'auto' being used was owned, operated by, rented to or loaned to any insured."  (Id. ¶ 36.)  The Complaint further alleges that Logan's injuries arose from his use of his service truck and, therefore, fall within the exclusion.  (Id. ¶¶ 39-40.)  The Complaint also alleges that, because the injuries set forth in the Underlying Action fall within this Exclusion, CFSIC has no duty to defend or indemnify CEC with respect to those claims.  (Id. ¶¶ 41-42.)  CFSIC seeks a declaration "that it has no duty under the CFSIC Policy to defend and/or indemnify CEC in connection with the claims brought against it in the Underlying Action."  (Id. at 10.)

CEC has moved to dismiss this action for failure to join indispensable parties and lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(7), 19, and 12(b)(1).  Specifically, CEC maintains that CFSIC has failed to name three indispensable parties as defendants in this action and that we would lose subject matter jurisdiction over this action if those parties were joined as defendants because such joinder would destroy diversity.  CEC also asks, in the alternative, that we decline to exercise our jurisdiction over this action because it has filed a declaratory judgment action in state court that involves the same parties and the same legal issues, specifically, Chris Eldredge Containers LLC v. Crum & Foster Specialty Insurance Company, et al., No. 2022-02348-MJ (Chester Cnty. Ct. of Com. Pls.).  (See Mot. Ex. A.)

Case 2:22-cv-01123-JP   Document 12   Filed 02/09/23   Page 5 of 17

## II.    INDISPENSABLE PARTIES

CEC states that on July 15, 2020, the date of the accident that is the subject of the Underlying Action, it was insured under three separate policies:  "a Commercial General Liability Policy through [CFSIC]; an Auto Liability Policy through Selective Insurance Company of America ('Selective'); and an Umbrella/Excess Policy through National Union Fire Insurance Company of Pittsburg PA ('National Union')."  (CEC Mem. at 2.)  CEC further states that all three of these companies have declined coverage to CEC and have failed to defend or indemnify CEC in connection with the Underlying Action.  (Id.)  CEC argues that Selective, National Union, and Logan are all necessary and indispensable parties to this lawsuit and that this lawsuit should be dismissed because their joinder would destroy diversity jurisdiction.  While CEC has cast this portion of its Motion as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), such a motion is properly brought pursuant to Rule 12(b)(7), which provides that a party may bring a motion to dismiss for failure to join an indispensable party.  See Fed. R. Civ. P. 12(b)(7).

A.    Legal Standard

Rule 12(b)(7) provides that a party may move to dismiss a complaint for "failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).  "In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party."  State Auto. Mut. Ins. Co. v. Frameworkers.com, Inc., Civ. A. No. 11-3271, 2011 WL 3204838, at *2 (E.D. Pa. July 27, 2011) (citing Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc., 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009)).

We use a two-step process to determine whether a lawsuit should be dismissed pursuant to Rule 12(b)(7).  First, we "determine whether the absent insurers should be joined as 'necessary'

5

parties under Rule 19(a)." <u>General Refractories Co. v. First State Ins. Co.</u>, 500 F.3d 306, 312 (3d

Cir. 2007). "If they should be joined, but their joinder is not feasible inasmuch as it would defeat

diversity of citizenship (as would be the case here), we next must determine whether the absent

parties are 'indispensable' under Rule 19(b)." <u>Id.</u> "Should we answer this question in the

affirmative, the action cannot go forward." <u>Id.</u> (citing <u>Janney Montgomery Scott, Inc. v. Shepard</u>

<u>Niles, Inc.</u>, 11 F.3d 399, 404 (3d Cir. 1993)).

> Rule 19(a) provides as follows:
>
> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).   To determine whether a party that is "necessary" under Rule 19(a) is

"indispensable" under Rule 19(b), we consider the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice either that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment without the person would be adequate; and (4) whether the plaintiff would otherwise have an adequate remedy if the action were dismissed.

<u>Tullett Prebon PLC v. BGC Partners, Inc.</u>, 427 F. App'x 236, 240 (3d Cir. 2011) (citing Fed. R.

Civ. P. 19(b)). "The moving party bears the burden of showing that a nonparty is both necessary

and indispensable." <u>Frameworkers.com</u>, 2011 WL 3204838, at *2 (citing <u>Pittsburgh Logistics</u> <u>Sys., Inc.</u>, 669 F. Supp. 2d at 618).

      B.    <u>Rule 19(a)(1)(A)</u>

Our analysis under Rule 19(a)(1)(A) concerns whether we "'can grant complete relief to persons already named as parties to the action; what effect a decision may have on absent parties is immaterial.'" <u>PECO Energy Co. v. Nationwide Mut. Ins. Co.</u>, 586 F. Supp. 3d 339, 346 (E.D. Pa. 2022) (quoting <u>Gen. Refractories</u>, 500 F.3d at 313).  Thus, "'[t]he possibility that potential claims for contribution and indemnification exist involving absent parties does not render those absent parties necessary or indispensable.'" <u>Id.</u> (quoting <u>Nat'l Liab. & Fire Ins. Co. v. Condran</u>, Civ. A. No. 21-95, 2021 WL 3884259, at *1 (E.D. Pa. Mar. 4, 2021)).  CEC does not suggest that we cannot grant complete relief to CFSIC and CEC without the absent parties.  Accordingly, we conclude that Selective, National Union, and Logan are not necessary parties that need to be joined to this action pursuant to Rule 19(a)(1)(A).

      C.    <u>Rule 19(a)(1)(B)</u>

CEC argues that the rights of the absent parties, Selective, National Union, and Logan, will be impaired, and they will be unable to protect their interests, if they are not joined as parties to this action so that they are necessary parties who should be joined pursuant to Rule 19(a)(1)(B).

      1.    <u>Selective and National Union</u>

CFSIC maintains that Selective and National Union are not necessary parties pursuant to Rule 19(a)(1)(B) because they do not have any interests that will be impaired if they are not joined in this action.  CFSIC relies on <u>General Refractories</u>, in which the United States Court of Appeals for the Third Circuit considered whether absent insurance companies that might also be liable to the policy holder for defense and indemnity of asbestos related claims in thousands of lawsuits

were necessary and indispensable parties to a declaratory judgment action brought by the policy holder against 16 of its other insurers. See 500 F.3d at 309-10. The Third Circuit noted that, under Pennsylvania law, "once multiple policies have been triggered for an indivisible loss (as is the case here), the insured is 'free to select the policy or policies under which it is to be indemnified.'" Id. at 313 (quoting J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502, 508 (Pa. 1993)). "Further, '[w]hen the policy limits of a given insurer are exhausted,' the insured 'is entitled to seek indemnification from any of the remaining insurers which was on the risk.'" Id. (quoting J.H. France Refractories, 626 A.2d at 508). The defendant insurance companies in General Refractories were concerned that inconsistent judgments in the state and federal courts could effectively foreclose their ability to recover any part of a judgment against them from the absent insurance carriers. Id. at 318. However, "'[t]he possibility that [the defendant] may bear the whole loss if it is found liable is not the equivalent of double liability. It is instead a common result of joint and several liability and should not be equated with prejudice.'" Id. (quoting Janney Montgomery Scott, 11 F.3d at 412). The Third Circuit concluded that the absent insurers were thus not necessary parties pursuant to Rule 19(a)(1)(B)(ii). Id. at 319.

CFSIC also relies on Axis Specialty Insurance Co. v. Brickman Group Ltd., LLC, Civ. A. No. 09-3499, 2010 WL 376784 (E.D. Pa. Jan. 28, 2010), in which we considered whether Brickman's (the insured) first excess liability insurance carrier, ACE American Insurance Company ("ACE"), was a necessary and indispensable party to a declaratory judgment action brought by the insured's second excess liability insurance carrier, Axis Specialty Insurance Co. ("Axis"), regarding whether Brickman was obligated to contribute self-insurance to the settlement of a personal injury action. Id. at *1-2. In this case, Brickman was self-insured for the first $250,000 of its liability, the ACE policy provided $750,000 in excess coverage, and the Axis

policy provided $5,000,000 in coverage in excess of the $1,000,000 of underlying insurance. Id. at *1. The settlement in the underlying personal injury action was $1,150,000. Id. Brickman argued that the Axis lawsuit should be dismissed pursuant to Rule 12(b)(7), because Axis failed to join ACE as a defendant and ACE was a necessary party pursuant to Rule 19(a). Id. at *4. Brickman argued that ACE would be prejudiced if the lawsuit were decided in its absence because the resolution of the lawsuit would have a "'direct impact'" on ACE's obligations to Brickman. Id. at *5. We rejected this argument, refusing to "speculate as to how a hypothetical resolution of the instant case might impact an also-hypothetical, future legal dispute between" Brickman and ACE regarding ACE's liability to Brickman. Id.

CFSIC further relies on Koppers Co. v. Aetna Casualty & Surety Co., 158 F.3d 170 (3d Cir. 1998), in which the insured brought an action against certain of its primary and excess liability insurers, but not INA, an excess insurer, because including INA as a defendant would destroy diversity. Id. at 171. Certain of the excess insurers who were named as defendants in the action (the "London Insurers") moved to dismiss the claims against them because the insured failed to join INA as a defendant. Id. The London Insurers argued that INA was a necessary party pursuant to Rule 19 because they could not "be held liable to pay on their excess policies unless and until the underlying insurers – including INA – ha[d] paid or ha[d] been held liable to pay the full amount of their underlying policies" because the London Insurers' policies were "directly excess" to the insured's INA policy. Id. at 174. The Third Circuit considered the terms of the insured's policies, which provided that the London Insurers would not have any liability to the insured unless a total of $1,050,000 was first paid by the insured or its underlying insurance carriers (including INA) and determined that the London Insurers' liability was independent of any liability resulting from INA's policy. Id. at 176. The Third Circuit concluded that INA was not a necessary party

9

pursuant to Rule 19(a) because complete relief was available to the parties without INA and "INA's ability to protect its interests [would] not be impaired or impeded by the disposition of the action it its absence." Id. at 176 (citing Fed. R. Civ. P. 19(a)(1)(i)).

CEC has failed to demonstrate that Selective and National Union would be unable to seek indemnity or contribution from CFSIC if CEC is found to be liable to Logan and those insurers provide coverage to CEC. See General Refractories, 500 F.3d at 313. CEC has also failed to show that Selective or National Union would be prejudiced if they were required to provide coverage for the full amount of CEC's hypothetical liability to Logan. See id. at 318. Accordingly, we conclude that CEC has failed to satisfy its burden of showing that Selective and National Union have interests that would be impaired or impeded by the disposition of this action in their absence and that they are thus necessary parties to this action pursuant to Rule 19(a)(1)(A) and are indispensable parties pursuant to rule 19(a)(1)(B). We therefore deny the Motion with respect to CEC's argument that this action should be dismissed pursuant to Rule 12(b)(7) because CFSIC failed to join Selective and National Union as Defendants.

2. Logan

CEC argues that Logan is an indispensable party in this case because he is the injured party and the plaintiff in the Underlying Action and has suffered significant injuries and financial damages for which he seeks recompense from CEC. CEC relies on Vale Chemical Co. v. Hartford Accident and Indemnity Co., 516 A.2d 684 (Pa. 1986), in which the Pennsylvania Supreme Court held, under the Pennsylvania Declaratory Judgment Act, "that where claims are asserted against an insured, those asserting the claims are indispensable parties in a declaratory judgment action to determine coverage between the insured and the insurer." Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 228 (3d Cir. 2005). However, the Third Circuit has held that "Vale is a procedural

10

and jurisdictional ruling." Id. at 229.  Consequently, Vale "does not constitute a substantive rule

of law that federal courts must apply in diversity cases.  NORCAL Mut. Ins. Co. v. Laurel Pediatric

Assocs., Inc., Civ. A. No. 21-66, 2022 WL 1308109, at *6 n.5 (W.D. Pa. May 2, 2022) (discussing

Treesdale, Inc., 419 F.3d at 228-29).

      Moreover, the Third Circuit concluded in Treesdale that the plaintiff in an underlying tort

action is not a necessary party to a federal court declaratory judgment action between the defendant

in the underlying tort action and the defendant's insurance company because the tort action

plaintiff does not have an interest that "'relate[s] to the subject of the action.'"  Treesdale, 419 F.3d

at 230 (quoting Fed. R. Civ. P. 19(a)(1)(B)).  As the Third Circuit explained, "'a party is only

"necessary" if it has a legally protected interest, and not merely a financial interest, in the action.'"

Id. (quoting Spring-ford Area Sch. Dist. v. Genesis Ins. Co., 158 F. Supp. 2d 476, 483 (E.D. Pa.

2001)) (citation omitted); see also Atl. Cas. Ins. Co. v. Dover Roofing & Gen. Remodeling

Exteriors Unltd. Inc., Civ. A. No. 17-228, 2018 WL 372165, at *2 (M.D. Pa. Jan. 11, 2018) (noting

that the Treesdale court "held that injured third parties do not have a legal interest in declaratory

judgment litigation between their alleged tortfeasor and its insurer" (citing Treesdale, 419 F.3d at

218-19, 229-30)).  We conclude, accordingly, that CEC has failed to satisfy its burden of showing

that Logan is a necessary party to the instant action pursuant to Rule 19(a)(1)(A) and is an

indispensable party pursuant to Rule 19(a)(1)(B).  See White Pine Ins. Co. v. Bala Inn, Inc., Civ.

A. No. 17-2789, 2018 WL 1141356, at *9 (E.D. Pa. Mar. 2, 2018) (concluding that the plaintiff in

an underlying tort action was not a necessary and indispensable party to the declaratory judgment

action between the defendant in the underlying tort action and that party's insurance company).

For the reasons stated above, we deny the Motion to Dismiss with respect to CEC's arguments that this proceeding should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join necessary and indispensable parties.

## III.   SECTION 2201 OF THE DECLARATORY JUDGMENT ACT

CEC asks, in the alternative, that we decline jurisdiction over this action pursuant to Section 2201 of the Declaratory Judgment Act because it involves only issues of state law.  As we mentioned above, CEC has filed a state court declaratory judgment action against CFSIC, Selective, National Union, and Logan in the Court of Common Pleas of Chester County, in which it seeks a decision regarding the duties of its three insurance carriers in connection with the Underlying Action.  See Chris Eldredge Containers LLC v. Crum & Foster Specialty Ins. Co., et al., No. 2022-02348-MJ (Chester Cnty. Ct. of Com. Pls.).  (See Mot. Ex. A.)

"When an action seeks [only] declaratory relief . . . federal courts may decline jurisdiction under the Declaratory Judgment Act."  Rarick v. Federated Serv. Ins. Co., 852 F.3d 223, 227 (3d Cir. 2017) (citing 28 U.S.C. § 2201(a)).  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration. . . ."  28 U.S.C.  § 2201(a).  "Courts have greater discretion to decline jurisdiction over actions for declaratory judgments because they seek an adjudication of rights and obligations prior to the enforcement of a remedy."  Rarick, 852 F.3d at 227 (citations omitted).  "The Supreme Court has long held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts."  Reifer v. Westport Ins. Corp., 751 F.3d 129, 134 (3d Cir. 2014) (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942); see also Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (stating that "district courts possess discretion in determining whether and when to entertain an action

under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites").

In <u>Reifer</u>, the Third Circuit listed eight non-exhaustive factors that we should consider in deciding whether to exercise our discretion to hear a declaratory judgment action:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

<u>Reifer</u>, 751 F.3d at 146. "When there is a pending parallel state proceeding," as there is in this case, "we must determine whether the relevant <u>Reifer</u> factors outweigh the strong presumption against exercising jurisdiction." <u>Main St. Am. Assurance Co. v. United Insulation Servs., Inc.</u>, Civ. A. No. 20-3430, 2022 WL 970841, at *5 (E.D. Pa. Mar. 31, 2022).

We consider each of the <u>Reifer</u> factors in order. First, the Declaratory Judgement Act allows this court to "declare the rights and other legal relations of [CFSIC]" as an "interested party seeking such [a] declaration." 28 U.S.C. § 2201(a). Thus, a declaration by this court will resolve the uncertainty of CFSIC's obligations to defend and indemnify CEC in the Underlying Action

under the CFSIC Policy.  Therefore, we conclude that the first factor weighs in favor of our exercise of jurisdiction over the instant action.

CEC claims in connection with the second factor, convenience of the parties, that Chester County, where it brought the state court declaratory judgment action, is more convenient for it than Philadelphia, where this Court is located.[1]  CEC does not explain why Chester County would be more convenient for the parties than the federal courthouse in Philadelphia.  We note that the Chester County courthouse is not far from Philadelphia.  See Hunter v. Shire US, Inc., 992 A.2d 891, 897 (Pa. Super. Ct. 2010) (noting that "Chester and Philadelphia Counties are adjacent to each other and are readily accessible in a short amount of travel time" (citing Raymond v. Park Terrace Apartments, Inc., 882 A.2d 518, 521 (Pa. Super. Ct. 2005); Zappala v. James Lewis Grp., 982 A.2d 512, 520 (Pa. Super. Ct. 2009))); see also Zappala, 982 A.2d at 520 (stating that "traveling from Chester County to neighboring Philadelphia County necessitates only a short drive" (citing Raymond, 882 A.2d at 521)); Raymond, 882 A.2d at 521 ("In reality, traveling from Delaware, Bucks, Montgomery or Chester County to Philadelphia is not particularly onerous."). We conclude that the second Reifer factor is neutral.

CEC argues that the third factor, "the public interest in settlement of the uncertainty of obligation," Reifer, 751 F.3d at 146, favors our declining jurisdiction because this case concerns only state law.  "The Third Circuit Court of Appeals has cautioned that 'federal courts should hesitate to entertain a declaratory judgment action where the action is restricted to issues of state

---

[1] CEC filed the state court declaratory judgment action on April 9, 2022, more than two weeks after CFSIC filed the Complaint in this action.  (CEC Mem. at 2 n.2.)  However, CEC maintains that it was not served with the Complaint in this action until after it filed the state court declaratory judgment action.  CEC filed an acceptance of service in this case on May 25, 2022. (Docket No. 4.)

law.'"  Jul-Bur Assocs., Inc. v. Selective Ins. Co. of Am., Civ. A. No. 20-1977, 2021 WL 515484,

at *3 (E.D. Pa. Feb. 11, 2021) (quoting Atl. Mut. Ins. Co. v. Gula, 84 F. App'x 173, 174 (3d Cir.

2003)).  "'[T]he public interest will not be better served by the federal court deciding the insurance

coverage issue when the state court, which has more familiarity with the underlying cases, can

equally well decide the issue.'"  Id. (alteration in original) (quoting Burke-Dice v. Gov't Emps.

Ins. Cos., Civ. A. No. 17-3198, 2017 WL 3485873, at *4 (E.D. Pa. Aug. 15, 2017)).  We conclude

that the third Reifer factor weighs in favor of our declining to exercise jurisdiction over this case.

        CEC also argues that the fourth, fifth and sixth factors, "the availability and relative

convenience of other remedies," the "general policy of restraint when the same issues are pending

in a state court," and the "avoidance of duplicative litigation," Reifer, 751 F.3d at 146, all favor

our declining jurisdiction because there is a pending state court action in which CEC seeks a

declaration with respect to the insurance coverage that is available to it in connection with the

Underlying Action.  We agree and conclude that the fourth, fifth and sixth Reifer factors weigh in

favor of our declining to exercise jurisdiction over this case.

        CEC suggests that the seventh factor, the "prevention of the use of the declaratory action

as a method of procedural fencing," id., favors our declining jurisdiction because CFSIC has

engaged in procedural fencing by moving to be dismissed from the state court declaratory

judgment action based on the existence of this action.  The state court, however, has not ruled on

that motion and has stayed the state court declaratory judgment action pending our decision with

respect to the instant Motion.  See Chris Eldredge Containers LLC v. Crum & Foster Specialty

Ins. Co., et al., No. 2022-02348-MJ (Chester Cnty. Ct. of Com. Pls.) (Docket No. 84).  Under these

circumstances, we conclude that the seventh Reifer factor is neutral.

CEC argues that the eighth factor, the "inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion," Reifer, 751 F.3d at 146, supports our declination of jurisdiction over this action because CEC is already seeking a state court declaration with respect to its insurers' obligations to provide it with a defense and indemnity in the Underlying Action. "The eighth factor, specific to the insurance context, considers whether exercising jurisdiction over the declaratory judgment action would permit an insurer to take inconsistent positions in state and federal court to the insured's detriment." Zurich Am. Ins. Co. v. MJF Trucking, LLC, Civ. A. No. 22-1194, 2022 WL 2953691, at *4 (E.D. Pa. July 25, 2022). "It would be inappropriate, for example, to permit an insurer to prove facts in a federal declaratory judgment action to establish a policy exclusion when those same facts would necessarily result in the insured being found liable in an underlying state court proceeding." Id. (citing Allstate Ins. Co. v. Harris, 445 F. Supp. 847, 851 (N.D. Cal. 1978)). There has been no showing in this Court that the facts CFSIC would need to prove in order to establish that a policy exclusion applies in this case would result in a finding of liability in the Underlying Action. Accordingly, we conclude that the eighth Reifer factor is neutral.

We conclude that the first factor weighs in favor of our exercise of jurisdiction over the instant action. We also conclude that the second, seventh, and eighth factors are neutral. We further conclude that the third, fourth, fifth, and sixth factors weigh in favor of our declining to exercise jurisdiction over this action. Thus, we conclude that the overwhelming balance of the Reifer factors are neutral or weigh in favor of our declining jurisdiction over this action so that the Chester County Court of Common Pleas may decide the obligations of CEC's insurers to defend

and indemnify CEC in the Underlying Action.  Accordingly, we decline to exercise jurisdiction over CFSIC's claims under the Declaratory Judgment Act.  <u>Rarick</u>, 852 F.3d at 227.

**IV.     CONCLUSION**

For the foregoing reasons, we conclude that Selective, National Union, and Logan are not necessary parties to this action and we deny the Motion to Dismiss on that basis.  However, because the balance of the <u>Reifer</u> factors are neutral or weigh in favor of our declining to exercise jurisdiction over the instant proceeding, we decline to assert jurisdiction over CFSIC's claims in this declaratory judgment action and we grant the instant Motion to Dismiss.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.

17